1808.

Lessee of NEFF *against* NEFF.

It is not necessary to entitle a party to a special jury that the attorneys should certify that it is not intended for delay. There is no time limited within which a party must apply for a special jury.

THIS was a motion by *Rush* and *Hopkinson* for the defendant, to remove this cause from the general to the special jury list, although it had been more than three years at issue. They relied on the acts of Assembly 2 *St. Laws* 267. 691., which entitle parties to a special jury, and put no limit to the time of applying for it; and also on a case between *Hall* and *Vandegrift* at the last term, in which the court allowed the change to be made, after the cause had been several years on the general jury list. It was essential they said in this case, because the controversy had interested a large community, and it was highly probable from the mode of returning a general jury, the defendant might have on the pannel some of his decided opponents.

and constantly afterwards followed the sea. In a second voyage with *Gideon* from *Wilmington*, he was cast away, and returned to *Wilmington*. In the winter of 1796 he lived in *Gideon's* house in *Wilmington*, and there went to school to learn navigation. In *March* 1797, he took a protection from the Collector of *Philadelphia* and sailed from that port. From 1796 to 1798, during some part of which period he was of age, he always boarded when ashore with *Gideon's* widow in *Wilmington*, where he kept his trunks, clothes, books, and papers; and from 1798 to 1800 he boarded when ashore at an inn in the same town. In 1800 he became a member of a Freemason's Lodge at *Wilmington*, and contributed his proportion of the room-rent. In the summer of 1801 he went to *Connecticut* on a visit to his relations; but, except in 1797 when he sailed from *Philadelphia*, and once when he sailed from *New-York*, all his voyages from 1795 to 1801 began at *Wilmington*, during which period he was successively seaman, mate, and captain. All his owners resided at *Wilmington*. The protection from the Collector at *Philadelphia* stated him to be twenty three years of age; but several witnesses swore to his being under age when he first went to *Delaware*. The bank of *Wilmington* required two indorsers on his notes, as they did on the notes of all non-residents; and he never owned or rented a house, had never been assessed or paid a tax, nor ever voted at an election in the state of *Delaware*, though he once offered his vote and it was rejected. In 1801 he sailed and never returned. The sum in dispute had never been in *Delaware*, the coffee from which it proceeded having come direct from the *West Indies* to *Philadelphia*.

*C. J. Ingersoll* for the father, argued it upon three points. 1. That *Thomas Guier* had no *domicil* any where. 2. That where there is no *domicil* of preference, custom and the law of *Pennsylvania* establish the *lex loci rei sitæ* as the rule of succession to personal as well as to real property. 3. That the *locus rei sitæ* being *Pennsylvania*, and no *domicil* of preference being shewn elsewhere, by the law of *Pennsylvania* the father was entitled to the succession.

*Hopkinson* and *Rodney* for the *Delaware* claimants.

*Wallace* opposed the motion on this ground, that the agreement of the attornies of this Court, which had been made a rule of the court, demanded as a prerequisite to a special jury, that the attorney should certify it was not intended for delay. It was true that no affidavit of defence was required by law in an action of ejectment, but the certificate was an independent matter. Here delay would be the consequence from the known state of the special jury list, the defendant had been negligent in not making an earlier application, and there was no certificate.

1808.

Lessee
of
NEFF
*v.*
NEFF.

Per CURIAM. The certificate is not required by the act of Assembly, and the rights of the parties are to be tested by that. The law limits no time for an application of this kind, and as the court thought proper to allow it in the case alluded to, it is essential to uniformity of decision that the motion should be granted.